

1  CAMERON CHURCH

2  1605 MCKINLEY DRIVE

3  RENO, NV 89509

4  775-420-8577

5  MADEINRENO775@GMAIL.COM

6  PRO SE PLAINTIFF

7

8                     **UNITED STATES DISTRICT COURT**

9

10                          **DISTRICT OF NEVADA**

11

12                                    Case number:___ 3:24-cv-00149 ___

13  CAMERON CHURCH, an individual,

14  Plaintiff,                                    COMPLAINT

15  v.

16  MATT BURNS, an individual,

17  JESSICA WARREN, an individual,          **DEMAND FOR JURY TRIAL**

18  and OUTDOOR LIGHTING PERSPECTIVES,      ☒ YES      ■ NO

19  a Nevada Business,

20  Defendants.

21

22                     **JURISDICTION AND VENUE**

23

24  1.This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this

25  action arises under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA), a federal law

- 1 - of -16-

that regulates minimum wage, overtime pay, recordkeeping, and child labor standards for employees in the private sector and in federal, state, and local governments.

2. This Court also has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the plaintiff's federal law claims that they form part of the same case or controversy.

3. This Court has personal jurisdiction over the defendants, as they reside and do business in Nevada, and the events giving rise to this action occurred in Nevada.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the defendants reside and do business in this judicial district, and a substantial part of the events giving rise to this action occurred in this judicial district.

# PARTIES

5. Plaintiff Cameron Church is an individual who resides and works in Reno, Nevada. He is a citizen of the United States.

6. Defendant Matt Burns is an individual who resides and does business in Reno, Nevada. He is the owner and operator of Outdoor Lighting Perspectives (OLP), a franchise that provides outdoor lighting installation and maintenance services. He is a citizen of Nevada.

7. Defendant Outdoor Lighting Perspectives (OLP) is a franchise that supplies outdoor lighting installation and maintenance services. OLP has its principal place of business in Reno, Nevada. OLP is a citizen of Nevada.

8. Defendant Jessica Warren is an individual who, on information and belief, was acting as an agent or representative of OLP in human resources or other managerial capacity. Her citizenship is presently unknown.

# FACTS

9. On or about January 3, 2022, plaintiff was hired by defendant Burns to work as an outdoor lighting installer for OLP.

10. Defendant Burns told the plaintiff that he was an independent contractor, not an employee, and that he would be paid $22 per hour, plus commissions for each project add-on he sold at a rate of 10% of the total add-on sale price.

11. Defendant Burns also told plaintiff that his hourly rate would increase after one month of employment.

12. Plaintiff accepted the offer and began working for OLP.

13. During his employment, the plaintiff worked an average of 40 to 50 hours per week, installing and maintaining outdoor lighting systems for OLP's customers.

14. Plaintiff was not paid overtime for any hours he worked over forty per week, nor was he provided with any meal or rest breaks, as required by the FLSA and the Nevada Revised Statutes, Chapter 608 (NRS).

15. Plaintiff was also not paid any commissions for the add-ons he completed, nor was he paid the promised increase in his hourly rate after one month of employment.

16. Plaintiff asked defendant Burns about his overtime, commissions, and hourly rate, but defendant Burns ignored or dismissed his inquiries, and insisted that plaintiff was an independent contractor, not an employee.

17. Plaintiff also questioned defendant Burns about the taxes that were not withheld from his paychecks and expressed his concern that he was misclassified as an independent contractor and that he was entitled to the rights and benefits of an employee.

18. On or about March 31, 2022, defendant Burns fired plaintiff, without cause or notice, for being a whistleblower and for asserting his rights as an employee. The termination was in violation of the parties' employment contract, which required two weeks' notice prior to termination.

19. Defendant Burns also refused to pay plaintiff the $1,720 in commissions that he owed him, as well as the two weeks of income ($2,464) that he was contractually entitled to receive upon termination without proper notice.

20. As a result of defendants' unlawful actions, plaintiff has suffered and continues to suffer damages, including lost wages, unpaid overtime, unpaid commissions, unpaid taxes, and emotional distress.

## CLAIMS FOR RELIEF

## First Claim for Relief: Violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

21. Plaintiff incorporates by reference the allegations in paragraphs 1 through 20 as if fully set forth herein.

- 4 - of -16-

22. The FLSA requires employers to pay employees at least the federal minimum wage for all hours worked and one and one-half times their regular rate of pay for all hours worked over forty in a workweek, unless the employees are exempt from the FLSA's overtime provisions.

23. The FLSA also requires employers to keep accurate records of the hours worked and wages paid to their employees and to provide employees with certain information about their pay and working conditions.

24. The FLSA further prohibits employers from retaliating against employees who complain about or assert their rights under the FLSA.

25. Defendants violated the FLSA by failing to pay plaintiff overtime for the hours he worked over 40 per week, by failing to keep accurate records of plaintiff's hours and wages, by failing to provide plaintiff with the required information about his pay and working conditions, and by firing plaintiff for complaining about and asserting his rights under the FLSA.

26. As a result of defendants' violations of the FLSA, plaintiff is entitled to recover $1690.50 in unpaid overtime wages, an equal amount of $1690.50 in liquidated damages, prejudgment interest, costs, and reasonable attorney's fees, as well as injunctive and declaratory relief, pursuant to 29 U.S.C. § 216(b).

# Second Claim for Relief: Violation of the Nevada Revised Statutes, Chapter 608

27. Plaintiff incorporates by reference the allegations in paragraphs 1 through 26 as if fully set forth herein.

28. The NRS requires employers to pay employees at least the state minimum wage for all hours worked and one and one-half times their regular rate of pay for all hours worked over forty in a workweek, or over 8 per day if the employee works more than 6 days in a week.

29. The NRS also requires employers to provide employees with a 30-minute meal break for every 8 hours of work and a 10-minute rest break for every 4 hours of work.

30. The NRS further requires employers to pay employees all wages and commissions due and owing within specified time periods and to withhold and pay all applicable state and federal taxes from employees' paychecks.

31. Defendants violated the NRS by failing to pay plaintiff overtime for the hours he worked over forty per week, or over 8 per day if the employee worked more than 6 days in a week, resulting in unpaid overtime wages in the amount of $1690.50. Defendants also failed to provide plaintiff with the required meal and rest breaks, entitling plaintiff to recover an additional amount of $1342 as a penalty. Moreover, defendants failed to pay plaintiff all wages and commissions due and owing within the specified time periods, resulting in unpaid wages and commissions in the amount of $7312.63. Additionally, defendants failed to withhold and pay all applicable state and federal taxes from plaintiff's paychecks amounting to $952.40.

32. Defendants' violations of the NRS were willful, intentional, and in bad faith.

33. As a result of defendants' violations of the NRS, plaintiff is entitled to recover his unpaid overtime wages, his unpaid wages and commissions in the amount of $7312.63, an additional amount equal to the unpaid wages and commissions in the amount of $7312.63 as a penalty, prejudgment interest, costs, and reasonable attorney's fees, as well as injunctive and declaratory relief, pursuant to NRS §§ 608.016, 608.018, 608.020, 608.040, 608.050, 608.160, 608.180, and 608.190.

## Third Claim for Relief: Breach of Contract

34. Plaintiff incorporates by reference the allegations in paragraphs 1 through 33 as if fully set forth herein.

35. Plaintiff and defendant Burns entered a written contract, whereby plaintiff agreed to work as an outdoor lighting installer for OLP, and defendant Burns agreed to pay plaintiff $22 per hour, plus commissions for each project add-on he completed, and to increase plaintiff's hourly rate after one month of employment.

36. The contract also stated that either party would give a two-week notice before terminating or quitting the employment relationship.

37. Plaintiff performed all his obligations under the contract, but defendant Burns breached the contract by failing to pay plaintiff the agreed-upon hourly rate, commissions, and increase, and by failing to give plaintiff a two-week notice before firing him.

38. Defendants' breach of contract was willful, intentional, and in bad faith.

39. As a result of defendants' breach of contract, plaintiff is entitled to recover his unpaid wages, his unpaid commissions, his lost income, compensatory damages, consequential damages, punitive damages, specific performance, rescission, reformation, injunction, restitution, and any other relief that the Court deems just and proper.

## Fourth Claim for Relief: Unlawful Deductions from Wages

40. Plaintiff incorporates by reference the allegations in paragraphs 1 through 39 as if fully set forth herein.

41. NRS 608.110 prohibits employers from withholding any portion of an employee's wages unless the employer has a specific statutory or contractual authorization to do so.

42. Defendants did not have any statutory or contractual authorization to withhold any portion of plaintiff's wages for the use of the check vending service.

43. Defendants required plaintiff to use the check vending service as a condition of receiving his earned wages and deducted a fee from each of plaintiff's paychecks for the use of the service.

44. Defendants did not obtain plaintiff's explicit consent for the deductions, nor did they provide plaintiff with any written notice or explanation of the deductions.

45. Defendants made a total of fifteen deductions from plaintiff's wages for the use of the check vending service, each of which constitutes a separate violation of NRS 608.110.

46. Defendants' unlawful deductions from plaintiff's wages were willful, intentional, and in bad faith.

47. As a result of defendants' unlawful deductions from plaintiff's wages, plaintiff is entitled to recover the amount of money that was illegally deducted, plus interest, costs, and reasonable attorney's fees, as well as injunctive and declaratory relief, pursuant to NRS 608.110 and 608.180.

## Fifth Claim for Relief: Fraud and Misrepresentation by the Employer

48. Plaintiff incorporates by reference the allegations in paragraphs 1 through 47 as if fully set forth herein.

49. Fraud and misrepresentation occur when a person makes a false statement of fact or conceals a material fact from another person, knowing that the statement or concealment is false, intending to induce the other person to act or refrain from acting on the statement or concealment, and causing the other person to suffer damages as a result.

50. Defendants engaged in fraud and misrepresentation by having defendant Burns' friend, Jessica Warren, pose as an HR representative and communicate with plaintiff, falsely promising to resolve plaintiff's issues regarding unpaid wages, overtime, commissions, taxes, and employment status, and repeatedly delaying or canceling the meetings with plaintiff.

51. Defendants knew that the statements and concealments made by defendant Burns' friend were false and intended to deceive plaintiff and prevent him from filing a lawsuit or seeking other remedies for defendants' violations of the FLSA, the NRS, and the contract.

52. Plaintiff relied on the statements and concealments made by defendant Burns' friend and refrained from taking legal action or pursuing other options for his employment situation.

53. Plaintiff suffered damages as a result of defendants' fraud and misrepresentation, including lost wages, lost commissions, lost taxes, lost income, emotional distress, and legal fees.

54. Defendants' fraud and misrepresentation were willful, intentional, and in bad faith.

55. As a result of defendants' fraud and misrepresentation, plaintiff is entitled to recover compensatory damages, punitive damages, costs, and reasonable attorney's fees, as well as injunctive and declaratory relief, pursuant to NRS § 41.130 and the common law of Nevada.

# Sixth Claim for Relief: Negligent Misrepresentation

56. Plaintiff incorporates by reference the allegations in paragraphs 1 through 55 as if fully set forth herein.

57. In the alternative to the fraud claim, defendants made negligent misrepresentations of material facts to plaintiff regarding resolving his issues with unpaid wages, overtime, commissions, taxes, and employment status.

58. Defendants failed to exercise reasonable care in communicating with plaintiff and providing accurate information.

59. Plaintiff reasonably relied on defendants' negligent misrepresentations to his detriment.

60. As a result of defendants' negligent misrepresentations, plaintiff suffered damages including lost wages, lost commissions, lost taxes, lost income, emotional distress, and legal fees.

61. Plaintiff is entitled to recover compensatory damages, costs, and other relief as the Court deems appropriate for defendants' negligent misrepresentations.

## Seventh Claim for Relief: Misclassification as an Independent Contractor

62. Plaintiff incorporates by reference the allegations in paragraphs 1 through 61 as if fully set forth herein.

63. The FLSA and the NRS define an "employee" as any individual employed by an employer and an "employer" as any person acting directly or indirectly in the interest of an employer in relation to an employee.

64. The FLSA and the NRS also provide various factors to determine whether an individual is an employee or an independent contractor, such as the degree of control exercised by the employer over the individual, the opportunity for profit or loss of the individual, the investment in equipment or materials by the individual, the skill and initiative required by the individual, the permanency of the relationship between the employer and the individual, and the extent to which the individual's work is an integral part of the employer's business.

65. Based on these factors, plaintiff was an employee of defendants, not an independent contractor, as defendants exercised significant control over plaintiff's work, such as setting his hours, assigning his tasks, providing him with tools and materials, supervising his performance, and paying him by the hour.

66. Plaintiff also did not have any opportunity for profit or loss, as he did not have any investment in the business, did not have any discretion in how to perform his work, did not have any risk of liability, and did not have any ability to negotiate his pay or terms of employment.

67. Plaintiff's work was also an integral part of defendants' business, as he performed the core service of installing and maintaining outdoor lighting systems for defendants' customers.

68. Defendants misclassified plaintiff as an independent contractor, instead of an employee, in order to avoid paying plaintiff overtime, wages, commissions, taxes, and other benefits that employees are entitled to under the FLSA and the NRS.

69. Defendants' misclassification of plaintiff as an independent contractor was willful, intentional, and in bad faith.

70. As a result of defendants' misclassification of plaintiff as an independent contractor, plaintiff is entitled to recover his unpaid overtime, wages, commissions, taxes, and other benefits, as well as injunctive and declaratory relief, pursuant to the FLSA and the NRS.

71. Plaintiff is entitled to a declaratory judgment that he was misclassified as an independent contractor and should have been classified as an employee under the FLSA and NRS.

## Eighth Claim for Relief: Wrongful Termination for Being Whistleblower

72. Plaintiff incorporates by reference the allegations in paragraphs 1 through 71 as if fully set forth herein.

73. The FLSA and the NRS protect employees from retaliation by their employers for exercising their rights under the wage and hour laws, such as complaining about unpaid overtime, requesting overtime pay, or filing a wage and hour claim.

74. Plaintiff exercised his rights under the FLSA and the NRS by bringing up the issue of overtime pay with defendant Burns and informing him that he was entitled to overtime pay for the hours he worked over forty per week.

75. Defendants retaliated against plaintiff for exercising his rights under the FLSA and the NRS by firing him, refusing to pay him his commissions and income, and engaging in fraud and misrepresentation.

76. Defendants' retaliation violated the FLSA and the NRS and interfered with plaintiff's right to be paid overtime wages.

77. Defendants' retaliation was willful, intentional, and in bad faith.

78. As a result of defendants' retaliation, plaintiff is entitled to recover his unpaid overtime wages, an equal amount in liquidated damages, a penalty of one day's wages for each day that the final

- 12 - of -16-

wages were delayed, up to 30 days, costs, and reasonable attorney's fees, as well as injunctive and declaratory relief, pursuant to 29 U.S.C. § 216(b) and NRS 608.040 and 608.050.

## Ninth Claim for Relief: Intentional Infliction of Emotional Distress

79. Plaintiff incorporates by reference the allegations in paragraphs 1 through 78 as if fully set forth herein.

80. Defendant Jessica Warren's intentional and malicious conduct has caused Plaintiff severe emotional distress, including anxiety, frustration, and mental anguish.

81. Her deceptive practices and evasive maneuvers were calculated to inflict emotional harm upon Plaintiff.

82. Plaintiff is entitled to compensatory damages for the emotional distress suffered as a result of Defendant Warren's actions, as well as punitive damages to deter similar conduct in the future.

## Tenth Claim for Relief: Civil Conspiracy

83. Plaintiff incorporates by reference the allegations in paragraphs 1 through 82 as if fully set forth herein.

84. Defendant Jessica Warren conspired with other relevant parties to deceive and obstruct Plaintiff in asserting his rights and seeking resolution for employment-related grievances.

85. This conspiracy resulted in harm to Plaintiff, including prolonged emotional distress and financial losses.

86. Plaintiff seeks damages for the harm caused by the civil conspiracy, including compensatory and punitive damages.

## Eleventh Claim for Relief: Breach of Duty of Good Faith and Fair Dealing

87. Plaintiff incorporates by reference the allegations in paragraphs 1 through 86 as if fully set forth herein.

88. As an HR representative or agent of Outdoor Lighting Perspectives, Defendant Jessica Warren owed a duty of good faith and fair dealing to Plaintiff in addressing his employment-related concerns.

89. Defendant Warren breached this duty by engaging in deceptive practices, obstructing Plaintiff's access to due process, and failing to act in Plaintiff's best interests.

90. Plaintiff has suffered damages because of Defendant Warren's breach, including financial losses, emotional distress, and other harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cameron Church respectfully requests that this Honorable Court grant the following relief:

1. Declare that Defendants' actions as alleged herein violate the Fair Labor Standards Act (FLSA), the Nevada Revised Statutes (NRS), and Plaintiff's rights under the terms of his employment contract.

1     2. Award Plaintiff the following:

2         a.   $1690.50 in unpaid overtime wages under the FLSA.

3         b. $1690.50 in liquidated damages under the FLSA.

4         c. $7,312.63 in wages and commissions under the NRS.

5         d. Additional wages and commissions owed as a penalty under the NRS, equal to

6         $7,312.63.

7         e. $10,560 for penalties under NRS 608.040 and 608.050 for failing to have wages at the

8         time of termination.

9         f. $2,464 for two weeks of unpaid wages.

10         g. $1,342 for missed break and lunch periods.

11         h. $1,728 in unpaid commissions.

12         i. $259.73 in unlawful deductions for direct deposit fees.

13         j. $952.40 for taxes that defendants failed to withhold.

14         k. Interest on all unpaid amounts as provided by law.

15         l. Costs and reasonable attorney's fees incurred in prosecuting this action.

16

17     3. Enjoin Defendants from further violations of the FLSA, the NRS, and Plaintiff's rights under his

18     employment contract.

19

20     4. Award Plaintiff compensatory damages for emotional distress, mental anguish, and other harm

21     suffered as a result of Defendants' actions, in an amount to be determined at trial.

22

23     5. Award Plaintiff punitive damages to punish Defendants for their willful, intentional, and bad

24     faith conduct, and to deter similar conduct in the future.

25     6. Order specific performance, rescission, or reformation of the employment contract as necessary

26     to remedy Defendants' breaches thereof.

27

7. Grant a declaratory judgment that plaintiff was misclassified as an independent contractor and should have been classified as an employee under the FLSA and NRS.

8. Grant any further relief that the Court deems just and proper.

Plaintiff prays for such other and further relief as the Court may deem just and proper. Plaintiff demands a trial by jury on all issues so triable.

CAMERON CHURCH

1605 MCKINLEY DRIVE

RENO, NV 89509

775-420-8577

MADEINRENO775@GMAIL.COM

PRO SE PLAINTIFF

# Exhibit Index

pages per

| A | Timecards | 1 of 12 |
| B | Check Stubs | 1 of 3 |
| C | Text convo between Pltf + Matt Burns | 1 of 6 |
| D | Text = Pltf + Jessica Warren | 1 of 7 |
| E | OLP "Employment" Contract | 1 of 4 |
| F | Last payment recieved (never cashed) | 1 of 1 |
| G | 1099-Nec from OLP | 1 of 1 |
| H | Commissions still owed form | 1 of 1 |
| ☐ | | of |
| ☐ | | of |
| ☐ | | of |
| ☐ | | |
| ☐ | | |
| ☐ | | |

# Exhibit



1 - 12



# Bulb Daddy
## Your LED Source
## 775-826-6222
**Call anytime to speak with a lighting expert**

Jan 9-15

10   9 - 7 / .5 hr Lunch / 9.5 hr  1½

11   9:30 - 6:45 / .75 hr Lunch / 8.5 hr  ½

12   9:30 - 5:30 / .5L / 7.5 hr  0

13   10 - 6:30 / .5L / 8 hr  0

14   9 - 3:30 / No Lunch / 6.5 hr  0

40 hr (2hr OT?)

1100 Terminal Way   Reno, NV   89502

1A

1 of 12

Jan 16th-22nd | [Hours]

[Expenses]

17th mon. — 8hr.

18th Tue - 9am - 3pm | 6hr - 14
∅L

19th Wed — 9am - 5pm | 8hr - 22
.5L

20th Thu - 9am - 5:30pm | ~~xx~~ 8.5hr
.5L                              30.5

21st Fri    9am - 5pm | 8hr.
                              38.5

Total: 38.5 hr
R 381.50

Expenses: (Gas - 1-18-22 - $85)
(Fedex - 1-21-22 - $55)(Saw Blade -
1-22-22 - $73.75)

Total: $215.75

Cameron Church

2 of 12



# Bulb Daddy
## Your LED Source
## 775-826-6222
### Call anytime to speak with a lighting expert

Hours

M 24 - 9 - 6 - ~~≠~~ 9   8   1

T 25   9 - 6 - ~~~~ 9   8   1

W 26   9 - 630 - ~~~~ 9.5 8 1.5

T 27   930 - 630 - 9. 8   1

F 28   9 - 630 - 9.5 8 1.5

S 29 - 10 · 6  -  8  [5ⁿ] [6
                              8
                         R 40  0 14h

Expenses - $40 · 1-24-22 - Gas

### 1100 Terminal Way   Reno, NV   89502

3 of 12



# Bulb Daddy
## Your LED Source
## 775-826-6222



# Bulb Daddy
## Your LED Source
## 775-826-6222

**Call anytime to speak with a lighting expert**

1-31 - 9-6 - 9

2-1    9:30-6.30    4      16

2-2    9 - 630      9.5    27.5

2-3    9 - 730      10.5   38

2-4    10 - 7       9      47    Reg  OT?
                                  40    7

1100 Terminal Way Re        002

4 of 12



# Bulb Daddy
## Your LED Source
## 775-826-6222
**Call anytime to speak with a lighting expert**

2/12

| | | | | |
|---|---|---|---|---|
| 7 | 9 - 730 | 7.5 | 7.5 | |
| 8 | 930 - 7 | 9.5 | 8 | 1.5 |
| 9 | 930 - 630 | 9 | 8 | 1 |
| 10 | 930 - 730 | 10 | 8 | 2 |
| 11 | 9 - 630 | 9.5 | 8 | 1.5 |

Reg 39.5 | OT 6

Total
45.5

1100 Terminal Way   Reno,NV   89502



# Bulb Daddy
## Your LED Source
## 775-826-6222
### Call anytime to speak with a lighting expert

[ 2/14 - 2/20 ]

14   9.530 / 8.5

15   930 - 5 / 7.5

16   930 · 5 / 7.5

17   10 · 600 / 8

18   9· 4 / 7

Reg
38
OT
.5

[ 38.5

**1100 Terminal Way   Reno, NV   89502**

6 of 12



# Bulb Daddy
## Your LED Source
## 775-826-6222

2/20 - 2/26   Call anytime to speak with a lighting expert

22    9-1      4

23    9-4      7

24    9-330   6.5

25    11³-3    4

Reg 21.5hr

1100 Terminal Way   Reno NV   89502

7 of 12



# Bulb Daddy
## Your LED Source
# 775-826-6222
### Call anytime to speak with a lighting expert

2/27 - 3/4

38.  9 - 3      6

1  9³⁰ - 12³⁰    3

3    2    9 - 4³⁰      7.5

3    3    9³⁰ - 6      8    .5

4    9 - 5      8

Reg          OT
33.5          .5

Total
33

**1100 Terminal Way   Reno, NV   89502**

8 of 12



# Bulb Daddy
## Your LED Source
## 775-826-6222
### Call anytime to speak with a lighting expert

3/6- 3/12

7   10~ 7/9/    8    1

8   9- 730/10.5/  8   2.5

9   9 -630/9.5/  8   1.5

10  $9^{30}$ 6/8.5/  8   .5

11  $10^{30}$- 530/   7

Reg 39   5.5 $^{OT}$

12

1100 Terminal Way   Reno,NV   89502



# Bulb Dadd
## Your LED Sourc
# 775-826-6222

Call anytime to speak with a light

3/13 - 3/19

14  9-8/11       8       3

15  1-9/ 8       8

16  9-6³⁰/9.5        8      1.5

17  1-6³⁰/5.5   5.5

18  9-6/9 .@⁵
    7.30/.5¹       8      1.5
          Reg 37.5   6 OT

            Total
            43.5



# Bulb Daddy
## Your LED Source
## 775-826-6222
### Call anytime to speak with a lighting expert

3/20 - 3/26

21  9-6    9       8      1

22  9³⁰ - 8³⁰ 11   8      3

23  10³⁰ - 7³⁰ 9   8      1

24  11 - 630 7.5   7.5    0

25 _____

F 31.5    5 ᴼᵀ

36.5

**1100 Terminal Way   Reno, NV   89502**



# Bulb Daddy
## Your LED Source
## 775-826-6222
**Call anytime to speak with a lighting expert**

3/27 - 4/2

9³⁰-5³⁰        8    0

0 9 10        8    2

10 - 7 9      8    1

10 - 3 30     5.5

Reg
28.5     OT 3

Total
32.5

~~1250~~  1699.50

~~1008~~
1133

51.5 Total
hours of
overtime
that wasn't
Paid.
Difference
of 51.5 ~~~~
\*.5 = 1133
dif of 566

**1100 Terminal Way    Reno, NV   89502**

12 of 12

# Exhibit

B

1–3



Check #VV370

**$567.60**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $567.55

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV370
02/28/2022

Cameron Church                    $    567.60

TO                    red sixty-seven and 60/100

DATE

MEMO

Item Activity

---

Check #VV364

**$847.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $470.35

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV364
02/21/2022

Cameron Church                    $    847.00

TO                    red forty-seven and 00/100

DATE

MEMO

Item Activity

---

Check #VV360

**$1,001.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $902.95

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV360
02/14/2022

Cameron Church                    $    1,001.00

TO                    and one and 00/100

DATE

MEMO

Item Activity

---

Check #VV359

**$1,034.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $1,031.45

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV359
02/09/2022

Cameron Church                    $    1,034.00

TO                    and thirty-four and 00/100

DATE

MEMO

Item Activity

---

Check #VV357

**$1,034.00**
CHECK PRINTED

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV357
02/05/2022

Cameron Church                    $    1,034.00

TO                    and thirty-four and 00/100

DATE

MEMO

Item Activity

---

Check #VV352

**$1,228.00**
INSTANT FUNDS FOR ACCOUNT
CAMERON CHURCH'S DEBIT CARD
SENT

Instant Funds Amount    $1,191.24

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV352
01/31/2022

Cameron Church                    $    1,228.00

TO                    and, two hundred twenty-eight and 00/100

DATE

MEMO

Item Activity

B

1 of 3

Check #VV390

**$704.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $704.00

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV390

04/11/2022

Cameron Church                          $    704.00

TO

dred four and 00/100

DATE

MEMO                                    *Matt Burns*

---

Check #VV388

**$334.40**
CHECK REJECTED
04/05/2022

**NOTE:** Incorrect amount. Hours Wrong. Would like it fixed or reviewed asap please. should be 32.5hrs@ $15. Not $334.40@$15.2e?

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV388

04/04/2022

Cameron Church                          $    334.40

TO

dred thirty-four and 00/100                    REJECTED

DATE

MEMO                                    *Matt Burns*

Message From Sender

---

Check #VV384

**$880.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $862.49

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV384

03/28/2022

Cameron Church                          $    880.00

TO

lred eighty and 00/100

DATE

MEMO                                    *Matt Burns*

Item Activity

---

Check #VV381

**$1,142.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $1,115.x9

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV381

03/21/2022

Cameron Church                          $    1,142.00

TO

and, one hundred forty-two and 00/100

DATE

MEMO                                    *Matt Burns*

Item Activity

---

Check #VV378

**$979.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $979.00

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV378

03/14/2022

Cameron Church                          $    979.00

TO

red seventy-nine and 00/100

DATE

MEMO                                    *Matt Burns*

Item Activity

| Activity Type | Time | Date |
| --- | --- | --- |

---

Check #VV374

**$792.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $776.2x

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

E BURNS ENTERPRISES LLC

VV374

03/07/2022

Cameron Church                          $    792.00

TO

dred ninety-two and 00/100

DATE

MEMO                                    *Matt Burns*

Item Activity

2 of 3

## Check #VV350

**$1,062.75**
INSTANT FUNDS FOR ACCOUNT
'CAMERON CHURCH'S DEBIT CARD'
SENT

Instant Funds Amount    $1,030.98

FROM:
**SALVATORE BURNS
ENTERPRISES LLC**

TO:

DATE:

MEMO:

E BURNS ENTERPRISES LLC
OR LIGHTING PERSPECTIVES

**VV350**

**01/24/2022**

DATE

**Cameron Church**

$    1,062.75

and sixty-two and 75/100

*Matt Burns*

---

Check #VV348

**$930.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $913.90

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

TO

DATE

MEMO

SALVATORE BURNS ENTERPRISES LLC

**Cameron Church**

$

Nine hundred thirty and 00/100

*Matt Burns*

---

Check #VV347

**$737.00**
DIRECT DEPOSIT FOR ACCOUNT
CAMERON CHURCH'S BANK
ACCOUNT SENT

Direct Deposit Amount    $722.34

FROM
**SALVATORE BURNS
ENTERPRISES LLC**

TO

DATE

MEMO

E BURNS ENTERPRISES LLC

**VV347**

**01/10/2022**

DATE

**Cameron Church**

$    737.00

dred thirty-seven and 00/100

*Matt Burns*

---

⟳ Item Activity

| Activity Type | Time | Date |
|---|---|---|

⟳ Item Activity

| Activity Type | Time | Date |
|---|---|---|

3 of 3

# Exhibit

C

1 -6

**Matt Burns**

Saturday, Mar 26, 2022 • 9:06 AM

I'm going to the shop this morning to check on everything. I have to assume something bad happened. I'm going to have to take steps unless I hear from someone. I have nothing else to go on. I do not understand why you guys don't trust me enough to tell me what's up. I've never had to go through this with a crew. All I ask is that you let me know what's going on.

Nothing is up Matt we had our 40 hours in and you don't want to pay us overtime so we don't want to work extra cuz it doesn't make sense and I got to say that you kind of hurt my feelings last week when you said I'm costing you money but then you won't even pay us overtime and you expect us to do extra for you and you say you need somebody you can rely on but you don't offer anything that people want to be reliable for so nothing bad happened we have just already put in our work for the week and since I figured you never got back to me on overtime, you said you were still thinking on from Monday I figured you would let me know when you made a decision and I do apologize for not answering my phone but I figured since I was on my weekend anything work-related could wait till Monday because it no longer makes sense to keep wasting all of my free time for you and you not to acknowledge it just not fair Matt, you told me when I got hired that you wanted to build a team you can count on and if you still want that I would like that so let me know if you want to have a meeting today and maybe we can talk otherwise let me know what you want to do.

We will talk Monday at the shop.

I spoke with my CPA and HR on OT. I was planning on discussing with you at lunch Friday. I need communication otherwise I can't run this business. You have no idea what I go through to keep this running.

---

**Matt Burns**

I spoke with my CPA and HR on OT. I was planning on discussing with you at lunch Friday. I need communication otherwise I can't run this business. You have no idea what I go through to keep this running.

No I kind of have an idea of what you go through Matt and I also kind of have an idea of how much I'm worth you and mind you I know I'm not anything with anything at the end of the day but at the end of the day I feel like you worked off need not just me but us and I don't like being taken advantage of I don't like my employer walking on me and it kind of sucks that I had to go learn tax law and it's law just to find out where I'm getting burnt wouldn't you agree and regardless of what you think you told me I know you told me I was on a 30 day review because you also said that you only hire people at 1620 based on experience but what I had more than enough experience you said okay I'll find a 30 day review to see if you can do all the shit you say you can do and then I well I brought the wages but then when I mentioned that you told me I was on a 90 with Brian and I'm as I thought no big deal right but then when I looked at my calendar and realized we were less than two weeks away from that 90 day, that kind of sucked and it just kind of sucks like you told me you want to build all this team and all that but if this is how you take care of your team I'm good I will work for you until I find something else but I promise that is going to be really really fast because there is someone else out there who will pay me what I'm worth

And please don't think or something and I'm going to steal your van to you I work or any of your stuff I'm not if you do not want me to work for you anymore I promise when I return your van not only will all of your stuff be in it but I'm going to make sure it's clean and returned respectfully because whoever had it before me did not do that

9:39 AM • SMS

We will talk Monday ↓ ve have this documented. Thanks, Cameron I now

☺ Text message  

---

**Matt Burns**  

We will talk Monday. I now have this documented. Thanks, Cameron I now know where you stand

I have my HR group that I'm working with right now regarding this situation. I want to take care of you and your brother but you're not making it easy. How can we build trust like this. Let's meet Monday and work through this.

What do you have documented the fact that I said I'm going to bring your stuff back if you don't want me to work for you this is the thing I'm talking about you say you want to build truck but you ain't no way, act like you trust me but that being said if I'm going to stay with you the first thing we need to clarify is am I an employee or am I an independent contractor because if I'm an employee we need to renegotiate my wages if I am an independent contractor the wages Disappear Completely and we're going to do it the right way and I'm going to bid each job like an independent contractor legally has that right but I'm not going to say I'm an employee we're going to need overtime taking backs pay from day one which is Ours by right by law so there do we stand on that one

Oh and I have an interview with Homeland Construction probably sometime Monday and you're offering me 45 and Bryan 35 to come over so kind of really need to know where we stand and I'll give you the supervisor number and you can call and verify if I wasn't even going to say anything do that's kind of how I feel like our relationship is gone but at the end of the day I'm shit not a piece of shit like that so I'm giving you the respect to let you know what's going on now

Ok- drop the keys off with me Monday. If your brother wants to stay on he can. Wish we could've worked this out

I am by no means accepting it and or bailing on you as long as we can come to an agreement I guess we can't so okay



☺ Text message  

C

1 of 6

← Matt Burns 

to an agreement but I guess we can't so okay

**Go for it man- I want my keys and everything Monday**

Okay cool well then if that's how we're going to play it you know I don't have a business license you know I can't be a 1099 independent contractor so you know I am your employee so then you know you kind of Legally obligated to make up that overtime and if not maybe ask you HR and if they say you're not send me the legal for me showing why I am I am an exempt employee because not an independent contractor don't have a business license doesn't work like that

That's not true. You signed an agreement and I have an HR department. I can have you talk with them next week to go over everything

I know what's legal or not. I can direct you. I just want my stuff back. In fact, can we meet up today?

I have two other businesses so I know how this works. I really wanted to work with you and your brother. I'd like to get the keys and everything as soon as possible, please. Then I can get you guys your last checks. I really wanted this to work out, man

If you are willing to talk more we can Monday. But let's not do this through text.

Saturday, Mar 26, 2022 · 4:38 PM

rea we can talk Monday. And not for what it's worth I'm not quitting or walking away I had no intention of leaving you hanging just like I said we had our 40 hours in for the week, and until overtime really wasn't planning on doing more than 40 but that being said I really wasn't going to leave you hanging like that so unless you're firing me I was still planning to go back to work Monday

↓

☺ Text message   

← Matt Burns 

**Ok**

Sorry those are so long feel free to skim them over or not. But if you did want to meet up this weekend and maybe go have lunch and talk for real let me know tell then I'm sorry for the heart attack but everything is fine- ish

Sunday, Mar 27, 2022 · 12:12 PM

**Let's talk tomorrow. I've read through everything and I'll go through it all in detail. I have 3 businesses and 17 total employees. I have legal council plus HR resources and an entire franchise system. I know what I'm doing. We will discuss tomorrow and let's meet at the shop- 9a.**

Monday, Mar 28, 2022 · 8:38 AM

Shop, earlenes or your house?

Monday, Mar 28, 2022 · 11:37 AM

**I had a family emergency**

No worries we're at earlenes trying to get the walls finished up

**Let's meet tomorrow . I had a bad family thing .**

For sure. Everything ok?

**It is not. But that's life**

**I'm at the hospital I'll have to hit you up later today**

Monday, Mar 28, 2022 · 4:02 PM

**Let's meet first thing tomorrow. I apologize for missing today. Had to deal with some unpleasant business**

Monday, Mar 28, 2022 · 6:27 PM

**I have very busy mo... ↓ ...tomorrow. With what happene ↓ ...ay. I'll be at the shop 9a sharp and we can go through**

☺ Text message   

← Matt Burns

**I have very busy morning tomorrow. With what happened today. I'll be at the shop 9a sharp and we can go through everything.**

Tuesday, Mar 29, 2022 · 9:34 AM

**Heading to the shop here soon**

**Will you be here to talk this morning?**

Tuesday, Mar 29, 2022 · 1:37 PM

**Cameron, when can we sit down and hash this out? There are a number of things that must get done this week.**

**Goose and a few others have contacted me. Goose by law has to have that other transformer installed per his HOA. Need to get it scheduled. Plus a few others.**

Tuesday, Mar 29, 2022 · 4:58 PM

Hey I'm at gooses right now getting that one done tod y for sure

**Thank you, Cameron**

**So it's 4 1/2" by 5"**

Yeah it's so weird shaped cut out because of the current fixture I guess the kind of bu lt around it but the square area that we have to work with that be the easiest is 4 1/2 by 5 and The Rock comes out from the wall at two and a half inch at its highest point so I e would need the mount plate to be smaller or at four and a half by 5 and then the fixture needs to be on an arm or something that would kind of push out from the wall about 3 in or more I ll send you another picture of the current light you know what I'm talking about



☺ Text message  

2 of 6

← Matt Burns

Can we meet in the morning? I have a box that arrived.

Yea

Thank you

Wednesday, Mar 30, 2022 • 8:02 AM

Hey so send me your HR address and let's meet there this morning yeah?

Just based off of what you told me this weekend I need to understand what I signed so if you call if you can meet me there and we can go over all of that and come up with an agreement because I don't like doing things without having an understanding of what I'm doing

We can't meet there. I never gave her a heads up. Plus, the corporate office is remote. We can do a conference call if I can give notice

That's crazy

It's not crazy Jess office is here we can't just show up she's a CPA too.

I need to give her notice

Okay well then where do you want to meet today?

I'll get you a copy of exactly what you signed. My place for today. I'm going to reach out to Jess this morning. I have your signed agreement here

You don't think it's crazy that you're kind of keeping HR a secret until you get to talk to them first that is the first time I've ever expressed concerns about resources that works like that I'm sorry it is completely foreign to me so I'm just vocalizing my concerns but okay I'm taking a shower I'll be there soon Brian's coming to get the van

It's not a secret. They are a 3rd party

Again crazy to me

← Matt Burns

It's not a secret. They are a 3rd party

Again crazy to me

I don't need them by law.

It's given to me by the franchise if needed. I use my CPA for the same purpose here locally.

You are the only person ever to give me such a hard time

I can tell

Wednesday, Mar 30, 2022 • 9:20 AM

Are you here yet

I'll have Jess join us on the phone at some point. She is aware of the situation

No I'd rather do that one in person I'll be there in a minute

When will you be here?

Getting off the freeway right now I had to air up my tires I have two bad ones

I'm here

Wednesday, Mar 30, 2022 • 12:02 PM

Hey so I apologize for my attitude and I don't want you to think that I don't see or appreciate everything you do for us this is the first time I've ever Worked 1099 I guess and it's all foreign to me and the tax thing scares me cuz like I said I've never done this so I don't understand it but regardless of my uneducation I just wanted to let you know that I really am not going to just bail out on not going to take any of your stuff I mean almost everything that we use at work is either mine or Brian's anyways cuz I don't like work issue most of the time I always end up eventually getting my own stuff, it's just easier in the end. if you're willing to work with me and meet me in the middle. I'm at 30 you're at 22 can we

← Matt Burns

your stuff I mean almost everything that we use at work in the van is either mine or Brian's anyways cuz I don't like work issue most of the time I always end up eventually getting my own stuff, it's just easier in the end. If you're willing to work with me and meet me in the middle, I'm at 30 you're at 22 can we split it and call it 26 for now and I'll hut up for a while and maybe in like another month or two we can review it again and see if there's been any beneficial changes from your perspective to see if maybe that can go up a little bit more then? Just call this my 90 and summarize it as - $2bhr
- Make attitude adjustments
- Increase performance pace
- Stop offering options that take a lot longer than I thought(i.e. rock mount wall step lights again sorry, they're taking so long.)

I'm sure there are things you would want to add to this list it still willing to move forward

And if I can make a recommendation to increase communication if we can just keep the channels of communication me to you even after Josh gets back on I don't have to middleman things through him I feel things would go a lot smoother important details wouldn't get lost in translation

Based on our interaction, I need to think about this. You were very confrontational and we could've come to a compromise this morning. Can you promise you'll be on time and communicate with me? Can you promise to discuss things in person without the attitude? There's so much I wanted to go over with you. Ill need to think about your proposal

I had a number of tools- where did they end up? I have no problem you using your own but I did reimburse for some stuff early on. I also like to make sure we have tools for our jobs. Just want to make sure all of the OLP stuff is somewhere safe.

I'll call you at the end of the day

3 of 6

**← Matt Burns** 📹 📞 ⋮

I'll call you at the end of the day

**Wednesday, Mar 30, 2022 · 3:36 PM**

Left you a vm- I'd like to go over everything with you when you are free. I am however, out of pocket till 6p or so with an event for builders

> Hey sorry phone was in the car but I'm with Brian we just finished up the third service call and now we're heading to earlier stuff. I'm going to see how much is left to do t at it really just the wall lights but we're going to do assess what all is left and as soon as I have a good time estimate I'll let you know

If the wall lights are too much trouble then we can remove and not worry about them. We can tell her it's prohibitive.

> Well I just went and bought a rotary hammer, this is really just an issue of not having the right tool I'm going to go try this that doesn't work out then I'll call it but that's been my biggest issue is just not having the right tool well I'll let you know here in a sec

**Thursday, Mar 31, 2022 · 8:50 AM**

> Tool worked. I need to pay my rent though so I have to return it. That and I'm still not sure where we stand after yesterday. The 2 week thing. Was that my 2 week warning before you fire me or? Not really sure

Ok. Yes- it's 2 week notice. We can chat about what you said later. Just want to finish everything we have and get some new stuff going.



**Thursday, Mar 31, 2022 · 4:28 PM**

> Hey will you send me copies of the 1099 and other tax stuff that I signed please

> Or can i please have an address and

---

**← Matt Burns** 📹 📞 ⋮

**Thursday, Mar 31, 2022 · 4:28 PM**

> Hey will you send me copies of the 1099 and other tax stuff that I signed please

> Or can i please have an address and phone number so i can contact hr myself

**Thursday, Mar 31, 2022 · 6:07 PM**

? 

> Cameron. You've been given 2 week notice. You can ride it out or be done right now. Either way, this is over. You had a chance to speak with Jessica on Tuesday and completely messed that up. She was that resource. The agreement is done. The 1099 is an annual tax form that will be mailed to you at years end- If you would like a copy of your W9 call Jess at +1-775842-0094 she will give you her address if needed with any other questions. I had Jessica on the line as a resource and she heard your entire outburst. I tried calling you yesterday to go over your text and you never answered or called me back. I'm not wasting anymore time on this. I've already been interviewing. If you have any other questions on the 1099 or anything else then you have Jessica's number. I sincerely wish you the best of luck moving forward.

> When do I get the commission for these jobs that are now finished Matt?

When I see the money, from the client Cameron

> Okay but the first add-on was already completed before the original job was completed so you should have already gotten that check and then from Jack's I don't understand why that one hasn't been paid out yet

You'll get when I get it. I'm not doing the text thing with you anymore. Invoices are out with clients

---

**← Matt Burns** 📹 📞 ⋮

· ·

> Hey so am I gonna get paid or?

**Wednesday, Apr 6, 2022 · 8:09 AM**

It all happened after last weeks work.

> OK. I'll fix it. What does that have to do with my pay check ? Or the other commissions?

Which was unclear how much work was done. But whatever was done to the electrical she is having issues

Because I can't get paid plus you never entered any hours into the system for 3 days. 2 of which I couldn't get a hold of you. To verify hours.

This electrical issue costs me money because now I have to have an electrician look at it all.

No one else had issues logging in except you and Brian. Not one other tech

> What's the electrical issue Matt? The Rain Bird in the backyard was unplugged that might be an electrical issue

> Then I apologize- it at me and my brother are fucking retarded but what does that have to do with me not getting paid not both of us not getting paid just me not getting paid doesn't make sense

Idk- but Earlene is upset. She sent a whole wall of text. I have to go there and figure it all out.

I paid for what the system said. You'll get you commission when I get paid for those jobs

Plus your notes don't make sense

> It was just showing you my hourly breakdown at 32.5 hours I don't know where you alleged y got your hours but either way if you did get them off of your system it was still more than your 15.2 hours that I paid for so that s why I rejected that check please make

---

 **Text message**  ⊕ ✳

 **Text message** ⊟ ⊕ ✳

 **Text message**  ⊕ ✳

4 of 6

← Matt Burns

I have the hours. In the system. I'll go back through it, Cameron. I have to get this other issue fixed so there's money in OLP bank to pay.

Wednesday, Apr 6, 2022 • 10:11 AM





😊 Text message

---

← Matt Burns

...the last week but regardless because of that stop asking my brother if I'm on drugs because then he tells you that I'm drinking which explains anything but i don't drink either I was just having a tough family week and i lashed out of my coworkers for that I apologize I'm not trying to start my own damn thing I don't have a business license but I understand I can't be an independent contractor I just want my fucking paycheck and honestly I would have kept going to work for you

Right now I'm consulting my council on how to move forward with you in and out times. I'll get back to you on the last check and how we will proceed since you thought you could just clock in and out at will.

> Okay I'll be down there in a little bit 2 figure this out

Don't bother. I need to have someone check this out

> K see you in a bit

Cameron, you don't work for me anymore. So that's not ok. Since you aren't under my insurance or license

> Well then pay me and I go away

> And I thought I did still work for you Matt you told me I had two more weeks

> And here's the the part that makes me realize you probably didn't even use the hours on the app because I forget to clock out last Monday. I didn't do it till the next day so when I did do it I had 24 hours that I wasn't going to try to hit one because I forgot to clock out so I was just going to send you my time card which is never been an issue in the past except this one time specifically but either way I don't know where you got 15.2 hours so you say I'm costing you money Matt your fucking with my livelihood right now your fucking with my rent that shit not okay

😊 Text message

---

← Matt Burns

why I rejected that check please make this right or I guess let me know how we really need to proceed

You clocked in every day last week but the last 2 actually and the hours were off. You clocked in and out Monday thru Wednesday. Then nothing Thursday and Nothing Friday

> Okay then how d I end up with 15.2 hours off of 3 days

Not sure. I know you didn't get to the job a few of those days till noon. Per both phone calls. To me on when you actually got to the site. I'll go back through and check again. Again, I earmarked the times we actually talked. And I have the saved messages from the late starts.

And yes you have been taken out of the system. I need to get paid for Earlene ASAP for payroll for the last 2 weeks

> What all the sudden you have payroll? And yeah I didn't have a start time I'm an independent contractor with remember I didn't work for you or are we still not clear with that that legally outlines

That's a term for I need money to pay my people

Do just stop. You have no clue what you're talking about

You are the unclear one

You're so damn smart go start your own thing

> Dude i just don't get why you're being like this like I apologize for my week last week but my f'cking grandmother is almost dead my mom's ex-husband who was basically like my dad died last week and I had to take her to the funeral on Saturday still not sure whether i'm getting kicked out of my house or not because of my landlord issues and bills and I apologize that shit overwhelmed me last week but regardless because of that stop asking my brother if I'm on drugs because then he tells you that I'm



😊 Text message

---

I thought you were having your council look into it? how are you going to go off of hours that you know are incorrect? That just costs both of us money. very unprofessional. Who is your Council, who handles your payroll, who is your HR, if they're local let's go have a meeting like let's go sit with HR for real or just pay me what you owe me, for real, and I'll go away. I'm not even asking for anything crazy I'm asking for my paycheck, plus my commission. I don't get why you feel it necessary to do all of this extra, again I apologize for last week, had some real family shit going on, still do, went to a funeral this weekend for a d... that was last weekend. My gr...ma falls basically

😊 Text message

Matt Burns

...her. she also has a law firm backing
...e agreement you signed which has
...ow concluded. She is an amazing
...source one I tried giving you several
...nes.

...s for your check I'll check back into
...st. I'm no longer around a computer.



So you either ignorant of the law or are
intentionally breaking it either way it's
no excuse and either way I don't really
care I just want to get paid and I will
leave you alone

...n blocking you for now- you are
...omething else man. I know this shit.
...ur damn agreement covers all that
...hat the fuck do you think o have all
...ese businesses for

I just want to get paid Matt you're really
going to block me then I'm going to call
a fucking lawyer

I don't know you hide that agreement
from me like it's a super secret I've been
asking to see it since all of this begin if
you would have just showed it to me
from the start I probably would have
realized what I signed away and not
pressed any of these issues you are
always so secretive

Friday, Apr 8, 2022 • 12:17 PM

So what day are we saying I got fired?
The last day I worked or are we going
with the actual day I got fired?
Which is the day before?

) Text message      

...top
And I think this is my favorite law that's
gonna need to be acknowledged



Still waiting for my contract too FYI

Saturday, Apr 9, 2022 • 7:12 AM

6.A6

# Exhibit

Wednesday, Apr 6, 2022 • 11:41 AM

Cameron, this is Jessica on behalf of
P. Do you have a second to discuss
r concerns with me so that we can
: you paid and rid ourselves of this
blem?

o, please give me a call to discuss,
:ause I am more than happy to work
h you.

> On what behalf? What is your title within
> the company ?

n the Authorized Agent, the
kdkeeper, the Accountant and handle
contracts and subcontractors

n also a certified payroll and labor
:cialist, but that is not my title within
; particular company.

derstand that you have been going
ough some hardship and having
uble not feeling heard on these
tters and I am here to talk with you
d help in any way possible, however,
: tax season and I would prefer to do
: over the phone and promptly if you
: available.

> So again, what is your title within this
> particular company please? Are you a
> partner for this company ?

. I just gave you my title(s) within the
npany. I have no stock or equity in
; company at all. I am hired for my
vices as an Authorized Agent for the
npany. The same as hired
fessional with any other company.

> So you work for Matt? Or OLP?

th.

meron, Matt is no longer accepting
/ communication ↓ ↕ you. I am the
ource and the p↓ you will need
talk with going forward. I really do need

Text message    

Both.

Cameron, Matt is no longer accepting
any communication from you. I am the
resource and the person you will need
to talk with going forward. I really do not
have time for this back and forth and I
am trying my best to try to get you what
you're asking for. If you do not wish to
speak with me, please say so and I will
cease communication. If you are
wanting to, you now have my number
and this matter can be discussed over
the phone. Thank you.

> Okay. Do you have an office ? I don't talk
> over the phone well, rather
> communicate face to face, that way
> there is no miscommunication

> Okay, so what's you doing tonight? Free
> to talk. Cause I'm at work

Understandable. I am available until
about midnight. So, just give me a call
when you have a moment and we can
discuss everything.

> So you don't have an office or do
> meetings??

Oh sorry. I thought I addressed that. At
this moment, due to COVID, I do not
have my public offices open. No.

If it is necessary, I can meet with you
over coffee or something of that nature.

> That would be really cool. When are you
> available?? I should be done around
> 4pm

Let me see, it may have to be tomorrow.
Give me a couple mins to discuss with
my assistant

I don't think today will be a possibility
unfortunately to discuss in person.
What does tomorrow look like? Ideally
for me Cameron if we could do some of
the preliminary on the phone to voice
your concerns and ↓ meet tomorrow
that would be best. ↓ t do you think?

Text message    

that would be best. What do you think?

> Yeah that works out, I think while I'm
> finishing up my job today and try to get
> my main concerns in some kind of
> translatable parameters LOL

> Because i do understand that I am kind
> of all over the place for what I've seen
> like I want so let me figure it out for real
> and I really do apologize for being a
> headache I know it is annoying no one
> wants to deal with it but at the end of
> the day I have to pay my bills but for
> what it's worth I really am sorry

Totally. I know how it is when you mix
stress and panic and grief. It is hard to
communicate anything but sounds and
gestures lol. That sounds good. Give me
a call when you're done and we can
discuss some more what we need to do
and then we can meet and kind of tie
loose ends!

You don't need to apologize. I
understand that you are having alot of
hardship and to me it sounds like you
do not feel heard. That's why I have
stepped in to listen. Truly, I want to
broker peace for you both and see if
there's a way to make everyone happy.
At the end of the day, you are a human
and you are going through some
stressful situations and know that I
100% take that into account.

Wednesday, Apr 6, 2022 • 2:17 PM

> Sorry for the novel! I'm still going to call
> later I just wanted to throw some of my
> thoughts out there before I lost them I
> guess but I really do have to get this
> done LOL

No worries. I did read your texts, I felt
very sympathetic to your plight. I think
you're right.. I think there was alot of
defense on everyone's part and Matt is
under tons of stress as well. He was
being secretive because it is my tax
season, I have already little under 500
tax clients that I deal with annually and I
typically do not hav ↓ ch time to
discuss. He did not ↓ to put me in a

Text message     

scuss. He did not went to put me in a
ad position. That's why I decided it
ould be best for me to mediate. Not
ly am I not as close to the situation so
y emotions are not wrapped up, but, I
m the one with the answers to your
estions.

Wednesday, Apr 6, 2022 • 6:25 PM

Hey just a heads up. didn't forget about
you. still working. I'm almost done now
probably in the next half hour or so

s will have to try this again tomorrow. I
ve had something come up. Thanks

Wednesday, Apr 6, 2022 • 10:47 PM

ell, I can't speak on anything with
rian and you being in on any kind of
gotiations in any means would be
appropriate. That is between them,
d if Brian wants you to look over
hatever he signs or signed, he will
ve to do that separately from us. I am
t going to give you access to anything
at he has signed as it is not legal or
cessary. I can bring you a copy of
ur agreement as you have requested
couple of times I believe. I can also tell
u that you are still uninformed on a
uple of items i.e. being 1099d. If you
ant to pay quarterly estimated tax
ayments, which is your right, that is
ne entirely seperate from a 1099. You
t a 1099 at the end of the year as you
ould with a w2. We cannot and will not
sue you one until the year is over as it
not the process. Nor has the IRS
ctated what the parameters are for
e form itself.

ave spoken with Matt enough to tell
u unfortunately, he is beyond done.
e wants nothing to do with this
ymore and the only thing left to
scuss is what he is willing to pay you
r your last check and the commisions
volved after that. I am not trying to be
ort in any way when I say this, but
yond that there is really nothing left
discuss. If/when you move (if it is
fore January of next year) you will
ant to update us s ↓ t we can send
ur 1099 to the correct place, and

) Text message   

---

to discuss. If/when you move (if it is
before January of next year) you will
want to update us so that we can send
your 1099 to the correct place, and
there's not much more then that.

No worries when it comes to Brian, I
totally understand why you can't really
touch that one. As for the 1099 thing.
And tax thing. I am obviously ignorant of
most of it. I'm not claiming otherwise.
but maybe you could educate me on the
parts I'm having trouble with so I can
hopefully avoid this misunderstanding in
the future. If you don't have time I get it
but if you could make some I'd really
appreciate it.

So quick question, what is a 1099-d?
The only 1099s that I can find that
* "could" apply for what I was and what
Brian is

* "could" apply, meaning,
If all parameters to qualify as either
1099 were met, which they are not I
believe :)

- in any way are:
1099 NEC
and a
1099 MISC
so I'm kind of confused on that one.

Thursday, Apr 7, 2022 • 9:32 AM

Cameron, if you are requiring that we
meet in person, I am willing to do that,
but I will need a time. I do not have
much time and am jam packed in my
schedule so, what are you thinking for
time?

Thursday, Apr 7, 2022 • 11:18 AM

I am free after 1pm so whenever that
works for you?

Thursday, Apr 7, 2022 • 12:39 PM

I'm sorry that does not work at this
point

Then how about you let me know what
works for you?

 Text message   

---

Then how about you let me know what
works for you?

Thursday, Apr 7, 2022 • 1:57 PM

Thursday, Apr 7, 2022 • 3:08 PM

I don't think meeting is an option at this
point. I have a tax deadline approaching
and too much to do. I'm sorry but I told
you my schedule was jam packed. We
will have to discuss this over the phone

Are you available

Yes I am

Ok..I just got busy again so give me a
little bit and I'll call you.

No worries

Thursday, Apr 7, 2022 • 5:11 PM

Hopefully you can call me back in the
next 15

Thursday, Apr 7, 2022 • 6:34 PM

Hey is there anyway I can get paid
through not that check vending service
it's really annoying to have to pay 3% of
every paycheck I get to get my
paycheck that adds up

How would you like to be paid?

Honestly if there is a direct deposit
option that doesn't cost me
percentages of my check that would be
ideal

And now thinking on it I kind of feel like I
still owe you coffee or you still owe me
coffee or ? Either way is that still a
thing? LOL

I am not sure on the ... ct deposit..
what about zelle? ↓

 Text message  

2 of 7

Jessica, Matt's HR/CPA...  

m not sure on the direct deposit..
hat about zelle?

rect deposit implies payroll typically
at's why it's not an option, but if you
ave zelle i think we could work that out

r a physical check? If we met for
iffce  that would Def take place much
rther in the future after tax season.
ahe if we get you put to another job,
aybe that will be a sooner thing

Direct deposit has nothing to do with
payroll that's just what it has become
known for but all a direct deposit is a
bank transfer from one account/ routing
number to another  account and routing
number

CASH app? Or current? Or even
messenger? Or a physical check if it
would be easier  otherwise just use the
vendor I guess

o. That's not true. If it was that
sehapp would be considered direct
spoeit and it is not.

you want a transfer I will ask Matt and
id get back to you.

one of that is helpful or relevant. Just
scuuse you can look things up on the
ternet like everyone else does not
ean that it's relevant to the situation. I
n fully aware that it is an electron
ansfer of money.. but the term for
hen depositing any type of paycheck
 direct deposit. Otherwise it is just a
ansfer. I will not continue to argue with
u about things I have been doing
ofessionally for almost 15 years.

will ask him and let you know. Thanks

Hey so what are we calling the day I got
fired. the last day i worked or the actual
day I got fired which was the day before
I think?

Yes except for things I am looking up are
absolutely relevant to the situation and
for you to say t   not makes me
want to question your credentials as a

  

Text message

---



absolutely relevant to the situation and
for you to say they re not makes me
want to question your credentials as a
tax person seriously. Along with the
other business titles you've given me.
Do they make these laws for a reason
it's those things like this do not happen
they are not laws so when things like
this happen people can take them
choose which laws they want to choose
to abide and follow at that time

And now I'm going to send you a whole
bunch of stuff so don't get
overwhelmed it's a lot of repetitive the
same scene just from different sources
cuz I double triple and quadruple check
everything i've seen and yet you guys
can't even tell me what I fucking signed
yet I'm still waiting on that by the way
but regardless I can present in paper I
can present it fact for why I say I'm right
are you guys here only responded with
words.

Common Nevada
overtime mistakes

Text message

---

Jessica, Matt's HR/CPA...  

Text message 

3 of 7



Cameron I have not sent you the contract once but twice. And yes, you did threaten me with a lawsuit. If you have not yet been paid for your 32.50 hours, that IS a problem that I would very much like to know about but as for the harassment and threats, we can leave that to the lawyers to dispute. Thank you

Anyways the gist is you volunteered to be the liaison officer in this. Idk if you remember what we, including Montgomery—

(Montgomery Burns? the Simpsons? Dick head boss reference?)

—agreed on.
Final hours, last check still wasn't correct, hour-wise.
- commission from Jack Lucas
Commission x2 from Earlene Forsythe.

Haven't seen any of those and in case Matt says he's still waiting for the check that s a lie because I have spoken with both customers and have verified that the account has been paid in full

And again for what it is worth I apologize for bringing you into this. really didn't think that it would be this much of a sideshow, honestly I expected a lot more from Matt

**I did exactly what I said I would do Cameron. I don't believe he's been paid for either of those jobs but I will check. Did you get paid for the 32.50 ho**

**Hours,?**

But just from everything I've learned and you can make fun of what you think my educating process was but regardless laws are things for a reason. And that being said I'm in the process of filing unpaid wages claims and some other Labor Board complaints. And I just kind of want to throw out there that it's ironic that Matt switched to payroll and W-2s and all of that right after he fired me even though I was really all I was trying to discuss because if he really

**Friday, Apr 8, 2022 · 12:12 PM**

Still waiting on that contract

And a check



**Friday, Apr 8, 2022 · 3:49 PM**

When can I get it hey I please just need a copy of the contract and whatever else I signed that you said you would send me yesterday please just do it please

**Wednesday, Apr 20, 2022 · 9:21 PM**

ameron I have not sent you the ntract once but t  ↓  And yes, you d threaten me with a lawsuit. If you





trying to discuss because if he really wasn t in the wrong it wouldn t make sense for him to make a move like that being as money and profit-oriented as he is.

**Cameron were you paid for your 32.50 hours?**

He's been paid. And as for the Met final check it was wrong again granted only by half an hour but that comes after the first completely incorrect check where I still don t know where he based those hours off. It took 11 days past the date of my termination (3/31/22) to get a paycheck that was still not correct. But Nevada labor law says that for every day my paycheck is late from the date of my termination it a day s wages so that would be eleven day s wages in addition to the commissions that he still loves me also in addition to the back over time that he owes me and the one part I m not sure about but I m pretty sure is he going to have to cover those back taxes as well now mind you I am not saying that one s a certainty cuz my limited education did not get there but the other plans mentioned are definitely true feel free to verify yourself. But to answer your question no I was not paid for my 32.5 hours in entirety still

**How many hours have you been paid for? And when?**

And I know you re going to try to say that that does not relate to me because I was an independent contractor to which I will say still I as that is incorrect doesn t matter what we said what I signed what we agreed upon the IRS and the labor board are both going to make their own decision in baseball for their parameters for making that judgement there is no way either department will find that I am an independent contractor over an employee

**That's fine that's not my call. I have dealt with them ma  ↓  es. I have no problem with that. My question and my**



4 of 7

independent contractor over an employee

at's fine that's not my call. I have
alt with them many times. I have no
roblem with that. My question and my
NLY concern is whether or not you are
ill owed money. Not for Forsythe and
ssss, but, for the 32.50 hours.

Scratch the baseball out of that last
part again I used talk to text and I don't
know what that part meant but I was
paid for 32 hours and yes I know it's
Petty to be tripping over a half an hour
but for how much it was already an
issue for it to still be incorrect it only
makes me think it's malicious intent

o. Its not petty. We agreed on 32.50, so
u should have been paid for that .50. I
ill make sure that happens.. would you
ccept the .50 on your commission
eck or would you like it separately?

Separately please and a paper check
would be preferable. I don't like having
to pay more money to get money from
Matt's check of vending service I'll take
cash or a check

Wednesday, Apr 20, 2022 · 11:12 PM

k.

Thank you

Thursday, Apr 21, 2022 · 11:04 AM

poke to Matt. He cannot pay it
parately and he's set up to have to do
by the electronic checks as he does
t have paper checks.

Saturday, Apr 23, 2022 · 4:36 PM

hey so I just wanted to let you know I
just got done combing through my email
like three times and I don't see either of
the emails you said you sent so I don't
know where you sent them but
regardless would you please resend it to

Camaron Church775

  

) Text message

---

 

Jessica, Matt's HR/CPA/...

know where you sent them but
regardless would you please resend it to

CameronChurch775
@gmail com

Thanks

For sure,I I'm not at home or the office
at the moment so could you do me a
favor and remind me in a couple of
hours so I don't forget?

Saturday, Apr 23, 2022 · 9:01 PM

Hey reminder. And what's up with that
coffee? LMAO JK

Sunday, Apr 24, 2022 · 6:33 PM

Hey did you web ever get a chance to
send that?

Monday, Apr 25, 2022 · 10:57 AM

Will you please send that to me? Also,
can I get Matt's lawyer's name and
number please?

Try this how about you email me and I'll
respond goffconsultants@gmail.com

Because I know I've sent that thing
multiple times

Monday, Apr 25, 2022 · 3:10 PM

Aha! I got the email on my phone thank
God..I am going back to get my little girl
and I don't have a scanner. But I can
take pictures and covert them to pdfs
and send to you. Sorry. Had a horrific
weekend in bed most of it.

Wednesday, Apr 27, 2022 · 10:20 PM

Hey can you just text a picture of it to
me, please?

I'm so effing sorry scanner not working
yes here I'll send now



Thank you

 Text message  

---

 Jessica, Matt's HR/CPA/... 

Thank you



 Text message 



So I think it's funny that when we had that meeting that day and I tried bringing up the Nevada labor laws you guys shut me down and said you somehow operated under federal guidelines because you're main office is based somewhere else there's been a lot of contradictions on everything that both of you upset and this contract is a joke at best like seriously who wrote it up mat? Anyways might want to have a sit down with Matt and really do a little bit of research and look at with the laws are and what waves are about to come because I still haven't been paid and I'm late on my rent now because of that so like this shit is ridiculous



Text message

---









Because from my perspective and I'm sure anybody is going to see it the same way cuz I've asked a lot of people trust me that this really just looks like some straight-up tax evasion there is no other

Text message

---

me that this really just looks like some straight-up tax evasion there is no other word for it so I don't know what to do here oh and taking advantage of stupid people cuz that's not cool but since you're supposed to be this alleged HR I'm talking to you so how do we handle this one

But it still doesn't say what kind of 1099 you guys are trying to classify me as and doesn't say any tax information that I signed in th it shit at all so again where is the legal in this please

You were not an employee

11:37 AM

Cameron you are extremely misinformed. And please do not pretend to know more then I do about taxes and the IRS. We are not meeting with you. You should look up what tax evasion is because even if your theory were correct, which it is not, it still wouldn't fall under that category. Nobody's hiding income. Now I do not think your stupid nor would I ever take advantage of somebody. You do not know me and I have been nothing but understanding with you.

I don't control when Matt gets paid, I know he knows he has to pay you so I will bring that up again with him. But I am no longer going to sit here and have you berrad Matt through me. You no longer work at OLP, sorry it did not work out the contract is severed. You have a check coming and there is nothing more to discuss.

Oh and you will get a 1099 at the beginning of 2023 for 2022 just like everyone else when they're due.

If you move, please make sure to give me your new address and my offer still stands to help you with your taxes for 2022 due to the 1099 income

You don't get to make the call on whether or not I was in employee

Text message

6 of 7

You don't get to make the call on whether or not I was in employee

Then show me how I'm wrong with facts? It shouldn't be this much of a fight to show me my ignorance, right? Unless there is more than going on.

Wednesday, Apr 27, 2022 • 2:04 PM

:ameron I am done speaking to you. ou have taken more than enough of my me and I am over it.

Wednesday, Apr 27, 2022 • 9:43 PM

God you are childish I would be more than happy to leave you the fuck alone just give me Matthews lawyers number please

.nd now you're cussing at me and :alling me names. I'm REALLY done with ou now. Go get your legal counsel and o whatever you need. I'm sure these :xts will go very far for you. If you text ie again I will consider it harassment nd do what I have to do legally as well. his conversation and your relationship ith myself and OLP and Matt Burns is fficially over. I'm asking you one very ist time. Do not contact me any further

Wednesday, Apr 27, 2022 • 11:26 PM

Ignorant

Thursday, Apr 28, 2022 • 12:36 AM

loted

Thursday, Apr 28, 2022 • 10:11 AM

Indeed

10:11 AM • SMS

:) Text message    

# Exhibit

$$\frac{E}{1 \; of \; 4}$$

# MATT BURNS
## DBA OUTDOOR LIGHTING PERSPECTIVES OF RENO-TAHOE

## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is made between Matt Burns DBA Outdoor Lighting Perspectives of Reno-Tahoe ("Client") with a mailing address of 303 W 3rd Street, City of Reno, State of Nevada 89503 ("Client") and Cameron Church ("Contractor") with a mailing address of 1605 McKinley Drive, Reno, NV 89509.

WHEREAS the Client intends to pay the Contractor for services provided, effective _____ 1/3/22 _____ under the following terms and conditions:

**1. Services.** The Contractor agrees to perform the following:

All tasks required for the installation and service of landscape lighting

Hereinafter known as the "Services".

**2. Payment.** In consideration for the services to be performed by the Contractor. 5-Star Gooogle reviews are paid at $25 per review. Another method of payment is a $50 referral fee per referral from a client that buys a package of any size. If working a night review any upsell is valued at a commission of 10% of gross for that upsell. Completion shall be defined as the fulfilment of Services as described in Section I in accordance with industry standards and to the approval of the Client, not to be unreasonably withheld. In addition, if the Contractor makes an error or delays the job by more than two days, the Contractor will not be paid the commission as aforementioned.

The Contractor agrees to be paid: $22/hr

The Contractor will be paid anytime from that Friday until the following Monday.

**3. Due Date.** The Services provided by the Contractor:

No due date.

**4. Expenses.** The Contractor shall be:

Responsible for all expenses related to providing the Services under this Agreement. This includes, but is not limited to, employment costs, taxes, Social Security contributions/payments, disability insurance, unemployment taxes, and any other cost that may or may not be in connection with the Services provided Contractor.

*Reimbursed for the following expenses that are attributable directly to the Services performed under this Agreement: any and all expenses related to the company vehicle or small tools needed in which The Contractor has been assigned.

*The Client will be required to pay the Contractor on immediate check thereafter or within 5 business days of any expense after receiving an itemized expense statement from the

Page 1 of 4

Contractor. The Contractor must provide the Client receipt(s) or proof of purchase for said expense(s) before any reimbursements are paid

**5. Independent Contractor Status.** The Contractor, under the code of the Internal Revenue Service (IRS), is an independent contractor and neither the Contractor's employees or contract personnel are, or shall be deemed, the Client's employees.

In its capacity as an independent contractor, Contractor agrees and represents:

Contractor has the right to perform Services for others during the term of this Agreement

**6. Federal and State Taxes.** Under this Agreement, the Client shall not be responsible for: Withholding FICA, Medicare, Social Security, or any other federal or state withholding taxes from the Contractor's payments to employees or personnel or make payments on behalf of the Contractor; Make federal or state unemployment compensation contributions on the Contractor's behalf; and the payment of all taxes incurred related to or while performing the Services under this Agreement, including all applicable income taxes and, if the Contractor is not a corporation, all applicable self-employment taxes. Upon demand, the Contractor shall provide the Client with proof that such payments have been made.

**7. Unemployment Compensation.** The Contractor shall be solely responsible for the unemployment compensation payments on behalf of their employees and personnel. The Contractor themselves shall not be entitled to unemployment compensation in connection with the Services performed under this Agreement.

**8. Indemnification.** The Contractor shall indemnify and hold the Client harmless from any loss or liability from performing the Services under this Agreement.

**9. Termination of Agreement.** This Agreement shall terminate upon:

Completion of the Services provided.

In addition, the Client or Contractor may terminate this Agreement, and any obligations stated hereunder, with reasonable cause by providing a minimum of a two (2) week written notice of:

A material breach of the other party; or

Any act exposing the other party to liability to others for personal injury or property damage.

**10. Option to Terminate.** The Client and Contractor shall:

Have the option to terminate this Agreement at any time by providing 14 days' written notice.

**11. Resolving Disputes.** If a dispute arises under this Agreement, any party may take the matter to a Nevada state court.

**12. Confidentiality.** The Contractor acknowledges that disclosure to a third party or misuse of this proprietary or confidential information would irreparably harm the Client. Accordingly, the

Contractor will not disclose or use, either during or after the term of this Agreement, any proprietary or confidential information of the Client without the Client's prior written permission except to the extent necessary to perform services on the Client's behalf.

Proprietary or confidential information includes, but is not limited to:

The written, printed, graphic, or electronically recorded materials furnished by Client for Contractor to use;

Any written or tangible information stamped "confidential," "proprietary," or with a similar legend, or any information that Client makes reasonable efforts to maintain the secrecy of business or marketing plans or strategies, customer lists, operating procedures, trade secrets, design formulas, know-how and processes, computer programs and inventories, discoveries, and improvements of any kind, sales projections, and pricing information; and

Information belonging to customers and suppliers of the Client about whom the Contractor gained knowledge as a result of the Contractor's services to the Client.

Upon termination of the Contractor's services to the Client, or at the Client's request, the Contractor shall deliver to the Client all materials in the Contractor's possession relating to the Client's business.

The Contractor acknowledges any breach or threatened breach of confidentiality that this Agreement will result in irreparable harm to the Client for which damages would be an inadequate remedy. Therefore, the Client shall be entitled to equitable relief, including an injunction, in the event of such breach or threatened breach of confidentiality. Such equitable relief shall be in addition to Client's rights and remedies otherwise available at law.

**13. Proprietary Information.** Proprietary information, under this Agreement, shall include:

The product of all work performed under this Agreement ("Work Product"), including without limitation all notes, reports, documentation, drawings, computer programs, inventions, creations, works, devices, models, work-in-progress and deliverables will be the sole property of the Client, and Contractor hereby assigns to the Client all right, title and interest therein, including but not limited to all audiovisual, literary, moral rights and other copyrights, patent rights, trade secret rights and other proprietary rights therein. Contractor retains no right to use the Work Product and agrees not to challenge the validity of the Client's ownership in the Work Product;

**14. No Partnership.** This Agreement does not create a partnership relationship between the Client and the Contractor. Unless otherwise directed, the Contractor shall have no authority to enter into contracts on Client's behalf or represent the Client in any manner.

3 of 4

**15. Governing Law.** This Agreement shall be governed under the laws in the State of Nevada.

**16. Severability.** This Agreement shall remain in effect in the event a section or provision is unenforceable or invalid. All remaining sections and provisions shall be deemed legally binding unless a court rules that any such provision or section is invalid or unenforceable, thus, limiting the effect of another provision or section. In such case, the affected provision or section shall be enforced as so limited.

**17. Breach Waiver.** Any waiver by the Client of a breach of any section of this Agreement by the Contractor shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

**18. Additional Terms and Conditions.** _____
_____
_____

**19. Entire Agreement.** This Agreement, along with any attachments or addendums, represents the entire agreement between the parties.

Client's Signature _____        Date 1/3-2022_____

Print Name _Cameron Church_

Contractor's Signature _____ Date 1/5/22

Print Name ___Matt Burns_____

Page 4

4 of 4

# Exhibit

F

---

1 of 1



F

1 of 1

# Exhibit

G

1 of 1



☐ VOID    ☐ CORRECTED

**PAYER'S** name, street address, city or town, state or province, country, ZIP or foreign postal code

Outdoor Lighting Perspectives
Reno-Lake Tahoe
303 West Third Street, Ste 9
Reno NV 89501
(775)749-3665

OMB No. 1545-0116

Form **1099-NEC**
(Rev. January 2022)

For calendar year
20___

**Nonemployee Compensation**

| PAYER'S TIN | RECIPIENT'S TIN |
|---|---|
| 83-1280776 | 530___ |

**1** Nonemployee compensation
$

**2** ___ made direct sales totaling $5,000 or more of consumer products to recipient for resale ☐

**RECIPIENT'S** name, street address, city or town, state or province, country, and ZIP or foreign postal code

Cameron Church
120 Heidelot Road
Reno Nevada 87306

**3**

**4** Federal income tax withheld
$

**5** State tax withheld
$
$

**6** State/Payer's state no.

**7** State income
$
$

Account number (see instructions)    2nd TIN not. ☐

www.irs.gov/Form1099NEC    Department of the Treasury - Internal Revenue Service

Form **1099-NEC** (Rev. 1-___)

**1099-NEC / COPY C**

**Copy C
For Payer
and/or State
Copy 1 or Copy 2**

For Privacy Act and
Paperwork Reduction
Act Notice, see the
current General
Instructions for Certain
Information Returns.

## Instructions for Payer

To complete Form 1099-NEC, use:

• The current General Instructions for Certain Information Returns, and

• The current Instructions for Forms 1099-MISC and 1099-NEC.

To order these instructions and additional forms, go to www.irs.gov/EmployerForms.

**Caution:** Because paper forms are scanned during processing, you cannot file certain Forms 1096, 1097, 1098, 1099, 3921, or 5498 that you print from the IRS website.

**Filing and furnishing.** For filing and furnishing instructions, including due dates, and to request filing or furnishing extensions, see the current General Instructions for Certain Information Returns.

**Need help?** If you have questions about reporting on Form 1099-NEC, call the information reporting customer service site toll free at 866-455-7438 or 304-263-8700 (not toll free). Persons with a hearing or speech disability with access to TTY/TDD equipment can call 304-579-4827 (not toll free).

G

1 of 1

# Exhibit

$$\frac{H}{1 \text{ of } 1}$$

Employee Name:   Cameron Church _____
                                    (Please Print)
Company Name:   Outdoor Lighting Perspectives _____
        Date:04/13/22 _____

My commission payable agreement with my employer was:   (CIRCLE ONE)  verbal    written as follows:
(If agreement was written, please attach a copy.)

A.   Commissions payable at the rate of _____10_____ % of ____ of each new sale and of new
additions at each job . _____
_____
_____
_____

      were due me at the time the sale or job was:   (CIRCLE ONE) completed  **collected**  other
_____

B. ____ Further, after I had received commission on a certain job or sale and it subsequently canceled, an
      adjustment was to be made whereby commissions which had been paid to me were to be deducted
      from further commissions.        (CIRCLE ONE)    Yes   **No**

C.   Also, if terminated, commissions earned or partially earned would be: (CIRCLE ONE)

      Forfeited        Yes   **No**
      Split with person completing the sale or job      Yes   **No**
      Payable to me under the arrangement listed above under   **Yes**   No
      Other:_____
_____

## COMMISSIONS DUE

| Customer Name or Other Identifying Data | Amount of Sale | Amount of Commission Due Me | Date Due |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| -Jack Lucas | $1,350 | $135 | Date of Termination ; 3/31/22 |
| | | | |
| -Earlene Forsythe 2 separate Owed Commissions | 1st Sale- $2,700 2nd Sale- $13,230 | $270 $1,323 | Date of Termination ; 3/31/22 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | $1728 | |
| | | | |
| | | | |

H